IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DARRELL DEAN SHARP, | Cause No. CV 13-89-GF-DWM-JTJ |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| TIM FOX, | |
| Respondent. | |

On October 21, 2013, Darrell Dean Sharp filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Sharp was subsequently appointed counsel and an Amended Petition was filed on November 16, 2015. (Doc. 46). The State filed an Answer to the Amended Petition on March 4, 2016. (Doc. 51). Sharp then retained substitute counsel who filed a Reply on Sharp's behalf. (Doc. 63). The Respondents filed their Response to Sharp's Reply on July 7, 2016. (Doc. 64). This matter is ready for adjudication.

## I. Proceedings in State Court

Sharp challenges his convictions in Toole County for aggravated assault, criminal endangerment, and assault on a peace officer. Am. Pet. (Doc. 1) at 1-2 ¶ 1.

Some of the charges arose in connection with a confrontation among Sharp;

1

his then-wife Melany Shulman, who was about to initiate or was obtaining a divorce from Sharp; and a third party, Halvorson, at whose home Shulman was staying with the children. Sharp went to Halvorson's home because he knew Shulman was there. In the midst of a confrontation between Sharp and Shulman, Halvorson arrived. Sharp struck Shulman twice and rammed Halvorson's vehicle with his own. This incident gave rise to several charges in Cause No. DC 09-010: kidnapping, aggravated assault, aggravated burglary, aggravated assault, assault on a minor, assault with a weapon, and criminal endangerment.

Months later, while Sharp was in pretrial detention, he bit a peace officer and poked him in the eye. (Doc. 22-2 at 13.) This incident gave rise to a charge in Cause No. DC 09-032 of assault on a peace officer.

Sharp entered into one plea agreement resolving both cases. He pled guilty to aggravated assault and criminal endangerment in connection with the confrontation in Cause No. DC 09-010, and to assault on a peace officer in Cause No. DC 09-032. Sharp signed the plea agreement on May 28, 2010.  On June 1, 2010, Sharp entered his pleas in open court.  The plea agreement contained the following "facts that cause me to plead guilty:"

> On or about June 5, 2009, I drove to the home of Torval Jay
> Halvorson in Toole County. When I arrived, I became involved in an
> argument with Melany Shulman. During that argument Torval Jay

2

> Halvorson arrived in his vehicle. I struck Melany Shulman twice with my fist causing her serious bodily injury. Then I pursued Torval Jay Halvorson in his vehicle. I knowingly rammed him his vehicle with my pick-up truck. When I rammed Mr. Halvorson's vehicle while he remained inside of that vehicle, I was aware there was a strong probability that my conduct would put Mr. Halvorson at risk of serious bodily injury. On September 28, 2009 while I was incarcerated in the Toole County detention Facility, I became angry. When I displayed my anger I admit I needed to be restrained. When I was restrained I struck Deputy Sundquist and bit his arm. At the time I bit and struck Deputy Sundquist, I was aware he was a Toole County law enforcement officer.

(Doc. 22-1 at 6 (underlining omitted).) At the change of plea hearing, Sharp clarified that he did not strike Deputy Sundquist but put his thumb in the deputy's eye. (Doc. 22-2 at 13-14.) In all other respects, Sharp's statements at the change of plea hearing were consistent with the written facts. The plea agreement also indicated that "[t]he intent of the State and the Defendant is that the Defendant's combined sentences . . . shall be Forty (40) years in the Montana State prison with 20 of those years suspended." (Doc. 22-1 at 3 ¶ 2.)

On August 12, 2010, in accordance with the plea agreement, Sharp was sentenced to serve a total of 40 years in prison, with 20 of those years suspended. Written Judgment was entered on August 27, 2010. (Doc. 22-3.)  He must serve at least ten years before he will be eligible for parole. (*Id.* at 3.)  Sharp did not appeal.

On September 13, 2010, Sharp filed his application for sentence review with

the Montana Sentence Review Division.  (Doc. 46-1 at 7, Doc. Seq. 163.)

Sharp temporarily put the sentence review proceedings on hold while he pursued,

in the trial court, a motion to withdraw his guilty plea and a petition for

postconviction relief. *See* Mont. Code Ann. §§ 46-16-105(2), -21-102.  Although a

copy of Sharp's postconviction petition has not been lodged with this Court, it is

apparent that Sharp managed to timely file the petition in the trial court pro se.  *See*

*e.g*., (Doc. 14-2 at 20.) (letter from Toole County Clerk of Court informing Sharp

he needs to pay the filing fee for the civil postconviction matter or file documents

evidencing indigence).  In his petition, Sharp appears to have raised claims of

conflict of interest, ineffective assistance of counsel, denial of speedy trial, and

actual innocence, among others.  Sharp's postconviction petition was dismissed by

Order filed February 14, 2011. (Doc. 14-2 at 15-16.) Sharp did not appeal this

decision.

Sharp filed the motion to withdraw his guilty plea on December 20, 2010

(Doc. 46-1 at 14-20).  The motion was denied by Order filed February 15, 2011.

(Doc. 51-8). Again, Sharp did not file a direct appeal.

Sharp then resumed his sentence review proceedings.  On May 31, 2011, the

Sentence Review Division affirmed Sharp's sentence.  (Doc. 51-7 at 1-2.) Notice

of this decision was received and filed in the trial court on June 2, 2011. *See e.g.*

4

(Doc. 46-1 at 8, Doc. Seq. 172.)

On June 15, 2011, Sharp filed an untitled document requesting all of the pretrial transcripts from both of his criminal cases.  (Doc. 46-2 at 1.)  It appears that this request was granted on August 10, 2011.  (Doc. 46-1 at 8, Doc. Seq. 174.) It remains unclear when Sharp received these transcripts and whether or not he received a complete set of transcripts. *See* (Doc. 63 at 5-6.) On May 21, 2012, Sharp filed a subsequent untitled request seeking documentation relative to the June 5, 2009 altercation in which he was involved.  (Doc. 46-2 at 3.)

Sharp also filed an untitled document in the trial court on February 20, 2013, addressed to the trial court judge.  (Doc. 46-2 at 5-30.)In this document, which the Court characterizes as a general airing of grievances, Sharp raised various concerns and sought to file a "formal protest" of his sentence to the prosecutor (*Id*. at 10), relief under the Federal Rules of Civil Procedure (*Id*.), to file a slander case against one of the deputies involved in Sharp's criminal case as well as one against the presentence investigation writer (*Id*. at 10-11), assistance in filing a case with the Montana Office of Disciplinary Counsel (*Id*. at 11), to file charges against the State of Montana for allegedly withholding documentation (*Id*. at 12), to file charges against the Montana Crime Victim's fund (*Id*.),  to file charges against the State of Montana for Sharp being required to wear prison clothes and shackles during his

5

court proceedings (*Id*. at 13), and, to file a formal protest against the purportedly

illegal plea agreement (*Id*.).  Attached to this document was a letter that Sharp

claimed to have written to an unidentified friend.  (*Id*. at 19-30.)

Additionally, on March 14, 2013, Sharp filed a Petition to Waive

Restitution.  (Doc. 46-1 at 8, Doc. Seq. 179.) The petition was denied on May 16,

2013.  (*Id*. at Doc. Seq. 182.)

On August 30, 2013, Sharp filed a petition in the Montana Supreme Court

seeking leave to file an out-of-time appeal as to his convictions and sentences. He

averred that he was not aware of the 60-day time limit for filing a notice of appeal

and that he was "given paperwork from my attorney (public defender) to file a

sentence review" but that his attorney "did not file the appeal for me." *See* (Doc.

14-2 at 13.) (noting sentence review forms enclosed). Sharp explained to the

Montana Supreme Court that he "recently discovered evidence that should grant a

dismissal on my sentence." He also alleged that "the plea I signed was illegal and

so was my sentencing." Pet. for Out-of-Time Appeal at 2, *State v. Sharp*, No. DA

13-0581 (Mont. filed Aug. 30, 2013).[1] On September 25, 2013, the Montana

---

[1] Sharp's petition in the Montana Supreme Court and the court's decision are available
on the court's website, http://supremecourtdocket.mt.gov (accessed January 10, 2017). This
Court takes judicial notice of the documents in the electronic file as showing what occurred in
the Montana Supreme Court. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); Fed. R.
Evid. 201(b).

Supreme Court denied leave to file an out-of-time appeal because Sharp failed to show "extraordinary circumstances amounting to a gross injustice." Order at 1, *Sharp*, No. DA 13-0581 (Mont. Sept. 25, 2013); *see also* Mont. R. App. P. 4(6).

Sharp filed his federal petition for writ of habeas corpus on October 21, 2013. Pet. (Doc. 1) at 8 ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Claims and Analysis

In his Amended Petition, Sharp advances the following claims: (1) ineffective assistance of trial counsel for failure to file a notice of appeal (Doc. 46 at 22-23); (2) ineffective assistance of trial counsel for failure to move to withdraw Sharp's guilty plea (*Id*. at 23- 25); and, (3) breach of the plea agreement (*Id*. at 25-27.) Sharp requests this Court grant relief either by affording him a direct appeal in state court or providing him the opportunity to withdraw his guilty plea.  (*Id*. at 27-28.)

### A. Statute of Limitations Under 28 U.S.C. § 2244(d)

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA").  AEDPA imposes requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  *Lindh v. Murphy*, 521 U.S. 320 (1997).  Because Sharp's petition was filed after the enactment of AEDPA, it is governed by its provisions.

7

AEDPA establishes a one-year period of limitation for a state prisoner to file a federal petition for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  *Jiminez v. Quarterman*, 555 U.S. 113, 114 (2009).  The statute of limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  "[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires."  *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 646 (2012).  In this case, Sharp did not file a direct appeal following the entry of judgment. Yet, he would have had 60 days from the entry of the written judgment in which to file.  Mont. R. App. Pro. 4(5)(b)(i).  This would have made Sharp's conviction final on October 26, 2010, and the AEDPA statute of limitations would have begun to run the following day.

Before that date arrived, however, Sharp timely filed his application for review of sentence with the SRD.  This action qualifies as a properly filed application for collateral review under 28 U.S.C. § 2244(d)(2).  The SRD decision was lodged with the trial court on June 2, 2011.  Thus, the AEDPA statute of limitations then began to run the following day, on June 3, 2011.

8

Absent applicable tolling, Sharp had one year in which to file his federal petition. Sharp's petition should have been filed with this Court on or before Friday, June 3, 2012. As set forth above, however, Sharp did not file his petition in this Court until October 21, 2013, well over a year after the limitations period had expired. Unless Sharp can demonstrate that the statute of limitations should commence on a later date under § 2244(d)(1)(B)-(D) or that he is entitled to tolling, his petition is barred by the statute of limitations.

**B. Statutory Tolling**

As set forth above, 28 U.S.C. § 2244(d)(2) provides the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. Sharp alleges that there were at least three motions filed that are relative to the statutory tolling analysis. In order for Sharp's petition to be timely, one or more of these documents would have had to trigger the tolling provision, that is, it would have to have been "a properly filed application for State post-conviction or other collateral review."

In his Amended Petition, Sharp seems to have conceded that the filing of the Request for Partial Transcripts would not have tolled the statute of limitations. (Doc. 46 at 16.) (acknowledging that Sharp's only filing that met the collateral

9

review requirement was the untitled February 20, 2013 document, and not the Request for Transcripts or the Request for Discovery).  In his Reply, however, Sharp argues that this document should be considered for purposes of equitable tolling and that any time elapsed between the request for the transcripts and the actual receipt of the transcripts should statutorily toll the limitations period. (Doc. 63 at 5-7.)

The Court will address the equitable tolling argument below.  The filing of the Request for Transcripts, however, does not entitled Sharp to statutory tolling. Because this document was not a collateral attack on the judgment, but rather a vehicle attempting to seek information, it would not toll the statute of limitations. The same can also be said of the Request for Discovery filed on May 21, 2012. *See generally Wall v. Kholi,* 562 U.S. 545, 553 (2011) ("'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process"); *Ramirez v. Yates,* 571 F.3d 993, 999–1000 (9th Cir.2009) (no statutory tolling for discovery motions because they did not challenge conviction and instead sought material petitioner claimed might be of help in later state proceedings); *Malcom v. Payne,* 281 F.3d 951, 957 (9th Cir.2002) (state petition for clemency is not an application for "State post-conviction or other collateral review" for AEDPA purposes and therefore does not

toll the limitations period under § 2244(d)(2)).  Thus, there was no document filed prior to the June 3, 2012, federal filing deadline that would have entitled Sharp to tolling.

Thus, the 26 page unidentified document filed on February 20, 2013, would have no effect on the filing deadline.  As set forth above, Sharp argues in his Amended Petition that he believes the February 20, 2013, document meets the requirements of being a document requesting review.  As has been established, however, this document was not filed within one year of the initiation of the running of the limitations period.  In fact it was filed one year and seven months after this date.  While the Court is not conceding that this document was either properly filed or was a legitimate post-conviction review or collateral attack on the judgment[2], it matters not because a document filed after the expiration of the statute of limitations shall have no tolling effect.  *Ferguson v. Palmateer*, 321 F. 3d 820 (9th Cir. 2003).  Even assuming the document was properly filed, it would have not served to toll the already expired limitations period.  The same analysis applies to the Petition to Waive Restitution which Sharp filed in the trial court in March 2013.

---

[2] Aside from the concerns relative to this document outlined by the State, see (Doc. 64 at 4-5), because Sharp was afforded the opportunity to file a postconviction petition, even if this document was construed as petition for postconviction relief, it would likely be dismissed as second or subsequent. Mont. Code Ann. § 46-21-105(1)(b).

11

Sharp failed to file the instant petition within the one year limitation period. He is not entitled to the benefit of any statutory tolling; the petition is untimely.

## C. Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 649 (2010). "The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness…and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F. 3d 993, 997 (9th Cir. 2009). The petitioner bears the burden of alleging facts that would give rise to tolling. *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). The high threshold of extraordinary circumstances is a necessity, "lest the exceptions swallow the rule." *Mendoza v. Carey*, 449 F. 3d 1065, 1068 (9th Cir. 2006).

Although there apparently remains a fact question, not explained by Sharp, of when the pretrial transcripts came into his possession, *see* (Doc. 63 at 5), assuming there was some period of unavailability, that fact alone does not provide Sharp grounds for equitable tolling. Under federal law, Sharp did not have a right to absolute right to these transcripts in the collateral review context. *United States*

12

*v. MacCollom,* 426 U.S. 317, 324-27 (1976).  "[T]he Constitution [does not] require that an indigent be furnished every possible legal tool, no matter how speculative its value, and no matter how devoid of assistance it may be, merely because a person of unlimited means might choose to waste his resources in a quest of that kind."  *Id*. at 329 (Blackmun, J., concurring).  Sharp has not demonstrated a particularized need for the transcripts.  Certainly, he was generally aware of the basis for the claims he advances now—failure to file an appeal, failure to move to withdraw the plea, and breach of the plea agreement—as evidenced by the documents he was able to file in the state courts raising varying iterations of these same claims.  The Court finds Sharp's need to for these transcripts to be conclusory.  As observed in *MacCollum*, "[t]he usual grounds for successful collateral attacks upon conviction arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript.  He may well have need of a transcript (to support his claim) but rarely, if ever . . . to become aware of the events or occurrences which constitute a ground for collateral attack."  *Id*. at 327-28.

In short, the purported lack of transcripts was not an extraordinary circumstance that made it impossible for Sharp to properly file on time; the basis

13

for the claims advanced was well known to Sharp.  Thus, the purported deprivation

of transcripts was not the proximate cause of Sharp's failure to file his federal

petition on time.  *Gaston v. Palmer*, 417 F. 3d 1030, 1034-35 (9th Cir. 2005),

amended by 447 F. 3d 1165 (9th Cir. 2006).  Or, put another way, the lack of

transcripts was not an extraordinary circumstance that made it impossible for Sharp

to timely file his federal petition.  *Ramirez*, 571 F. 3d at 997.  Also, while Sharp

may have believed he acted with diligence in seeking to develop his claims in the

state courts, the same diligence is not present relative to Sharp's filing of his

federal petition.  This fact alone is evidence by the sixteen month gap in time that it

took Sharp to file his federal petition.  Thus, Sharp cannot establish either an

extraordinary circumstance or the exercise of diligence relative to the habeas

petition filed in this Court.  Because Sharp has not met his burden of establishing

either element, he is not entitled to equitable tolling and his petition remains

untimely.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Sharp has not made a substantial showing that he was deprived of a constitutional right.  Further, because he has not demonstrated a basis to excuse his untimely filing, reasonable jurists would find no basis to encourage further proceedings.  There are no close questions and there is no reason to encourage further proceedings.  A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The Amended Petition (Doc. 46) should be DISMISSED as time-barred.

2.  The Clerk of Court should be directed to enter judgment, by separate document, in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

15

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Sharp may object to this Findings and Recommendation within 14 days.[3] 28

U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo

determination by the district judge and/or waive the right to appeal.

Sharp must immediately notify the Court of any change in his mailing address

by filing a "Notice of Change of Address." Failure to do so may result in dismissal

of his case without notice to him.

DATED this 18th day of January 2017.


/s/ John Johnston_____
John Johnston
United States Magistrate Judge

---

[3] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

16